THE UNITED PORTO RICAN BANK, Plaintiff and Appellant, *v.* DEOGRACIAS GONZÁLEZ, ETC., Defendant and Appellee.

No. 6082. Argued December 8, 1933.—Decided May 31, 1934.

756

*Fiddler & Newsom, Jr.,* for appellant. *L. Llorens Torres* for appellee.

MR. JUSTICE DEL TORO delivered the opinion of the court.

This is an action for damages caused by the defendant's alleged "conversion to her own use" of certain movables mortgaged to the plaintiff. Claim is made for $3,000 as the value assigned to the converted property, interest from August 1, 1929, the date on which the mortgage became due, and the costs of the suit.

From the record it appears that on June 27, 1928, José J. González Nieves constituted in favor of The United Porto Rican Bank, the plaintiff, a mortgage to secure a loan of $4,000 made by the plaintiff to mature on June. 30, 1929, on forty-one oxen belonging to him and of which he was in possession in the Municipality of Gurabo. The contract executed

for that purpose was recorded in the Registry of Property of Caguas on July 3, 1928.

At this stage, the defendant, Deogracias González, widow of Jiménez, in an action of debt she had brought, in the District Court of San Juan, against José J. González Nieves, asked for and obtained the issuance of a writ of attachment directed to the marshal of the District Court of Humacao, who executed it by attaching as the property of the defendant in the action, José J. González Nieves, thirty of the forty-one mortgaged oxen, and delivering them on deposit to Fausto Carrasquillo, of Gurabo. The attachment was levied on August 27, 1928.

On October 4, 1928, a judgment by default was rendered in the action brought by the defendant in San Juan, adjudging the said José J. González Nieves to pay to the plaintiff herein $1,000, with interest thereon and costs; and the present defendant, plaintiff in that action, moved the court to make an order appointing Santiago Calderón as a custodian of the attached oxen and ordering their transfer from the district of Caguas to that of San Juan, and, notwithstanding an objection made by The United Porto Rican Bank, the court so decreed.

At the time of making the transfer, only twenty of the thirty oxen attached were found, and the depositary stated that the other ten had perished in the San Felipe hurricane. The twenty transferred oxen were sold at public auction in the judicial district of San Juan, in execution of the judgment by default rendered on February 18, 1929, for the sum of $700, which the marshal delivered to the defendant herein through her attorney. No notice of the auction or of the sale was given to The United Porto Rican Bank. Neither in the notices of the execution nor at the time of the sale was any statement made as to the oxen being mortgaged. When the loan secured by the mortgage became due, it was not paid by the debtor, José J. González Nieves, to The United Porto

Rican Bank, either wholly or partially, nor had it been paid at the time of the trial of this suit, February 17, 1931.

The District Court of Humacao rendered judgment against the plaintiff, with costs. In the opinion delivered to sustain its judgment, it held that the registration of the mortgage had not been shown at the trial, for which reason the defendant could not be charged with notice of its existence prior to the attachment, and that any knowledge the defendant had acquired afterwards did not preclude her from pressing the foreclosure, because mortgaged property is susceptible of attachment and sale, the purchaser at such sale, of course, acquiring no other right than that of the mortgage debtor.

In its opinion the trial court called attention to the fact that when the mortgaged oxen were transferred to San Juan, the plaintiff did not record its mortgage in that district, and concluded by saying:

"If it failed to do so and thereby its mortgage lost the effectiveness that such registration would have given it against everyone, it can not recover against other persons by reason of any harmful consequences which its own negligence may have brought upon it. The court thinks that in the judicial district of San Juan was the means which The United Porto Rican Bank had to prevent the damages it now claims. If this remedy was not found to be sufficient, it could have resorted to some other judicial proceeding whether legal or equitable, to which it was entitled, and if it failed to avail itself thereof, the defendant in this case was not to blame for said omission."

When the plaintiff learned of the court's decision, it moved to reopen the case for the presentation of the original mortgage contract with its note of registration in the Registry of Property of Caguas, and explained the circumstance whereby a copy of the contract had been left in the record in place of the original. For that purpose a stipulation in regard to substitution of exhibit, signed by counsel for both parties, was presented.

The court thereupon made the following ruling:

"In accordance with the foregoing stipulation of the parties, the court considers as substituted the duplicate copy of the mortgage contract, dated June 27, 1928, as plaintiff's exhibit No. 1, in lieu of the triplicate copy attached to the record, and considers its opinion of May 29, 1931, as amended in so far as it refers to the non-registration of the mortgage in the Registry of Property of Caguas."

Therefore, all the findings of the trial court founded on the non-registration of the mortgage in the original district are left without a basis. As the mortgage was recorded prior to the attachment, it must be concluded that the defendant had full knowledge of its existence. Already this court, in construing the special law in regard to the matter —Act No. 19 of 1927 (Session Laws, p. 490)—in the case of *United Porto Rican Bank* v. *Ruiz,* 43 P.R.R. 506, has held, to quote the syllabus, that—

"The recording of a chattel mortgage in the district where the mortgagor resides and the property is located, is notice to all persons—whether or not they reside in said district—of the lien existing on the property."

That conclusion must be reached even without the refiling of the mortgage in the district of San Juan, because, as was also decided in the case of *United Porto Rican Bank* v. *Ruiz, supra,* "it is only necessary to record anew the mortgage in the district to which the property is removed when said removal is made with the consent of the creditor," and here the transfer was made not only without the consent but against the express opposition of the creditor.

Starting from that premise, that is, from the fact of notice of the existing mortgage in favor of the plaintiff, let us see whether the defendant could attach the mortgaged property in the manner she did, and, completely disregarding the rights of the owner of the mortgage, could validly cause the mortgaged property to be sold at public auction and appropriate to her own use the entire proceeds of the sale.

In our judgment, the mortgaged property could be attached, but not in the way in which it was done. Here, as the record shows, the attachment was levied as follows:

" . . . certify that in compliance . . . I attached the defendant's property itemized below: . . .

"And the bovine cattle described below, the property of José J. González: . . . "

That is to say, the oxen were attached as if they belonged entirely to José J. González, when the truth was that, by virtue of the previous transaction that the plaintiff had made with him, said plaintiff had acquired an interest in them which the defendant could not disregard. The attachment would have been valid only if it had been executed subject to that interest.

We reach this conclusion, inspired by the principle that all possible vitality should be given to the freedom of contract and to the circumstance that section 13 of the act refers to "a subsequent attaching creditor." Otherwise, taking into account the history of chattel mortgages, we would have been obliged to decide that the attachment could not even have been executed. See Jones, "Chattel Mortgages" (5th ed.), pp. 1, 2, 752, and 753; see also the holding of the Philippine Supreme Court in *Bachrach* v. *Mantel*, 25 Phil. Rep. 410, thus:

"Under the Chattel Mortgage Law the mortgagee becomes the owner of the property in the sense that he has the legal title, the mortgagor having the right to retain possession, to have the beneficial use, and to defeat the title of the mortgagee by compliance with the terms of the mortgage. In a sense, the mortgagee is the legal, the mortgagor the equitable owner."

We are referring to the special act in regard to the matter—Act No. 19 of 1927 (Session Laws, p. 490)—as it was in force when the events in the instant case occurred. Subsequently, section 10 of said act was amended as follows:

"Section 10. No mortgagor of personal property shall sell, pledge or otherwise dispose of or encumber property mortgaged by him, or

:any part thereof, without the written consent of the mortgagee. But :such property may be attached after depositing in the office of the :secretary of the court taking cognizance of the case the amount of the obligation secured by mortgage; *Provided,* That the mortgaged property shall not be removed from the municipality where it is located, prior to the deposit of said amount, except as provided in section 9 of this Act." Act No. 71 of 1930 (Session Laws, p. 448).

The attachment, in the form in which it was levied, was the first step taken by the defendant in contravention of the law and against the right of the plaintiff. It would have had no consequences if the rights of the plaintiff had been recognized afterwards. But this was not done. In complete violation of the provisions of the act, the defendant requested and obtained the transfer of the property to another district. We say "in complete violation of the provisions of the act," because section 9 thereof definitely provides:

"Section 9.—No personal property upon which a personal-property mortgage is in force shall be removed from the municipality in which the same is located at the time of the execution of the mortgage without the written consent of the mortgagee, and if such consent is given a certified copy of the mortgage shall be recorded in the registry of property of the district to which the property is removed." Act No. 19 of 1927 (Session Laws, pp. 490, 498.)

After the property was transferred, persisting in the continued violation of the law and of the rights of the plaintiff, the defendant succeeded in having said property sold, and appropriated to her own use the entire proceeds of the sale.

Could she act in such manner with impunity? Does the fact that it was done by virtue of orders of the court and through its officers shield her?

We have had the benefit of only the plaintiff's brief. The appellee did not appear at the hearing of the appeal nor did she present her brief within the new term granted her for that purpose. Under such conditions, in accordance with the study we have made of the case, we believe that both questions must be answered in the negative. The acts of the

defendant were voluntary; more than voluntary, deliberate, since they continued up to the end, after the express opposition of the plaintiff, and consequently she must be liable for the damages caused thereby; which damages can be claimed judicially, irrespective of any other action that the plaintiff could have brought against the marshals of Humacao and San Juan, or for the recovery of the mortgaged property.

What were the damages sustained by the plaintiff in consequence of the acts of the defendant? The plaintiff maintains that the measures of damages is the value of the property mortgaged to the plaintiff itself, which the defendant converted to her own use by virtue of the attachment and sale, said value computed as of the date of the attachment, and in our judgment the defendant is right.

There was evidence in regard to that point. The witness Julio Rodríguez testified that he was overseer of the "Nave" property in Gurabo, and was so in August of 1928; that he had charge of the oxen on the plantation; that there were thirty oxen on said property in August 1928; that he had checked with Attorney Molina the list of the oxen mentioned and described in plaintiff's exhibit No. 1; that the thirty oxen referred to were the same ones that were mortgaged to The United Porto Rican Bank; that said oxen were attached by Deogracias González and that he himself delivered the oxen to the marshal; that at that time the oxen were in good condition; that they were young oxen; that he had been engaged in agriculture for about sixteen years; that on that date oxen like those sold for six dollars an *arroba;* that the oxen averaged sixteen *arrobas* each; that it came to about $96 for each ox.

Another witness, Santos Torres, testified that he had seen the oxen that were grazing on the "Nave" property; that they were young oxen, and that, in his opinion, they were worth $6 an *arroba.*

José J. González Nieves, the debtor, testifying as a witness, stated that the oxen involved in the instant case were

bought in 1927; that on August 27, 1928, said oxen were worth $6 an *arroba,* and on the date they were transferred to the property of Mr. Carrasquillo they were worth $3,000: that is, $100 each.

That evidence was not contradicted. Calculated at ninety-six dollars for each ox, the price of all of them amounts to $2,880, which is the sum that the defendant must pay to the plaintiff, with legal interest from October 18, 1929, the date on which the complaint was filed.

It was alleged in the answer and may be conceded, that it was proved at the trial that ten of the attached oxen perished in the San Felipe hurricane. Notwithstanding that, we think that the defendant is bound to reimburse their value. It was through steps taken by her and for her own benefit that the oxen were taken out of the control and possession of the debtor and deposited with another person who put them to graze on the property that the river overflowed at the time of the hurricane. It was not shown that said oxen would have perished if they had remained under the control of the debtor.

The judgment appealed from must be reversed and another rendered instead in favor of the plaintiff, adjudging the defendant to pay to the plaintiff the sum of $2,880, with legal interest thereon from October 18, 1929, and the costs of the suit.